**Bernard E. Newton, Plaintiff-Appellee, v. Mamie Lehman, Defendant-Appellant.**

**Gen. No. 65–43.**

Third District.

February 3, 1966.

Harold C. Lounsberry, of Rock Island, for appellant.

Stewart R. Winstein, of Rock Island, for appellee.

ALLOY, J.

The proceeding from which this appeal is taken originated as a Declaratory Judgment action against Mamie Lehman, Defendant, by Bernard E. Newton as Plaintiff, requesting that the Circuit Court of Rock Island County find that the claim of Defendant that she was the wife of Plaintiff by virtue of a purported common-law marriage in Iowa was not true and requesting that the court find the parties to be not legally married. Defendant has never resided in Illinois. Any common-law marriage involved in the proceeding would have been entered into in the State of Iowa on the basis of pleadings filed in the cause.

Defendant, Mamie Lehman, a resident of Iowa when the suit was commenced was served with summons outside of the State of Illinois. Such Defendant entered a special appearance in a motion to quash return of service. The motion was overruled on October 16, 1963, and Defendant was given twenty days within which to plead. No pleading was filed, and on November 20, 1963, the Circuit Court held the defendant to be in default and on

December 17, 1963, a decree was entered by the court decreeing that no common-law marriage existed between the parties. Plaintiff notified Defendant's attorney by mail and by telephone that a hearing would be held on the merits of the Declaratory Judgment action on November 20, 1963. Defendant did not appear on that date and the court entered an order of default. On December 17, 1963, the court entered an order decreeing that there was no common-law marriage between the parties.

On January 8, 1964, Defendant Mamie Lehman filed a verified answer and counterclaim for separate maintenance in which she alleged the parties were husband and wife and that Plaintiff had abandoned their home. In such answer and counterclaim, Defendant asserted that she was Mamie Newton Lehman and that she and plaintiff were husband and wife by virtue of a valid common-law marriage under the laws of the State of Iowa and she prayed for separate maintenance. On January 16, 1964, within 30 days of the entry of the default and the Declaratory Judgment Order, Defendant filed a motion to vacate such orders. The motion alleged that the court had no jurisdiction over the defendant, a nonresident, and likewise had attached thereto and made a part thereof, a copy of the verified petition in equity filed in the District Court of Scott County, Iowa, entitled Bernard E. Newton v. Mamie Newton, in which Bernard E. Newton presumably stated that the parties began living together as husband and wife and that such actions on part of Plaintiff and Defendant constituted a common-law marriage and that the parties recognized the common-law marriage as binding upon each. The motion also asserted that defendant was a nonresident of the State of Illinois and that the failure to answer and defend the suit in Illinois was not the result of negligence on the part of defendant but rather a desire to choose the courts of the state of her residence as a forum. It was asserted that the inconsistent allegations in the State of Iowa and at the

hearing in the proceeding in the Illinois Court constituted a fraud upon the court, and that this action has forced defendant to submit to the personal jurisdiction of the Illinois Court. Defendant then alleged that she has a good and meritorious defense to the cause of action and prayed that the court set aside the order for Declaratory Judgment and that the filing of her answer and counterclaim for separate maintenance be approved and that she be granted a trial on the merits in the cause. The motion itself was not verified. The answer and counterclaim for separate maintenance which was filed, were verified.

Plaintiff filed counteraffidavits setting up that notice was given to defendant's attorney informing him of the date of the trial and also that defendant's attorney was called the day before the actual default and when requested whether or not he would appear stated that he was not going to appear at the time of the hearing on November 20 at 10:00 a. m. and that the Illinois proceeding would be ignored. It was also asserted that the motion to vacate the order was insufficient in that it contains no verification as required by Section 72 of the Practice Act. The motion was taken under advisement on February 21, 1964, and on March 3, 1965, the court entered an order denying defendant's motion to vacate the Declaratory Judgment Order. It is from denial of such motion to vacate that defendant now appeals.

In conjunction with the appeal in this cause, Plaintiff has filed a motion to dismiss the appeal, strike the Record on Appeal filed in this court and to strike the abstract of record and the brief of defendant-appellant on the ground that the Record on Appeal was not transmitted within 60 days after notice of appeal had been filed herein and that the abstract and brief of appellant were not filed on or before 30 days after the time for filing of the Record on Appeal in accordance with Uniform Appellate Court Rules. Notice of appeal was filed on April 2, 1965. On April 15, 1965, defendant-appellant filed her

motion to extend the time in which to file a Report of Proceedings in the trial court until July 6, 1965. An order was entered by the trial court allowing such motion. No Report of Proceedings, as such, was actually filed in the case since there was in fact no transcript of evidence as a result of the default proceeding. The Record on Appeal was filed on July 6, 1965, and the Statement, Brief and Argument of defendant-appellant was filed on August 5, 1965.

■ Under the procedure available to appellant pursuant to Uniform Illinois Appellate Court Rules (1963 Ill Rev Stats c 110, § 201.1) the Report of Proceedings at the trial normally would be required to be filed within 50 days after notice of appeal and the Record on Appeal would be filed not more than 60 days after said notice of appeal. The trial court, by proper order, extended the time for filing the Report of Proceedings until July 6, 1965, an appropriate extension of 45 days from May 22, 1965, when the Report of Proceedings would normally have been required to be filed. The Record on Appeal was filed on July 6, 1965, within the time allowed by the trial court. The Abstract and Brief of appellant were filed within 30 days after filing of the Record on Appeal. As indicated by the parties, the extension of time for filing of the Report of Proceedings granted by the trial court was entered by agreement of the parties and the circumstance that there was in fact no transcript of evidence but only an order of default does not deprive the defendant-appellant of the benefit of such extension of time available for filing of the Record on Appeal and such report as may be available as a result of proceedings in the Circuit Court. The motion to dismiss the appeal, strike the Record on Appeal and to strike the abstract and brief of defendant-appellant which were taken with the case is, therefore, denied.

■ As this proceeding has developed, defendant has never specifically raised the question of whether an Illi-

306

nois Court has jurisdiction under the Declaratory Judgment Act to declare the status of a marriage. Nevertheless, we feel it appropriate to review this situation as it relates to the facts before us. Under the provisions of the statute (1963 Ill Rev Stats, c 110, § 57.1) no independent or specific rules for service are required in declaratory judgment actions and the courts of this State have taken the view that a declaratory judgment action is in fact sui generis and takes on the legal character of the matter which is sought to be determined by such action. As stated in Freeport Motor Cas. Co. v. Tharp, 406 Ill 295, 299, 94 NE2d 139, a declaratory judgment action "is neither legal nor equitable but is sui generis . . . We think it takes the character of the nature of the relief declared, in this case a suit at law involving the rights of the parties and the liability under the terms of a policy of insurance, and the judgment rendered thereon is in the nature of, and is governed by the rules affecting the rendition and entry of, judgments at law." To the same effect is Jones v. Hodges, 2 Ill App2d 509, 119 NE2d 806. The action in the instant case, by the terms of which the Plaintiff seeks to have declared invalid a purported common-law marriage, is in the nature of an annulment action rather than a traditional divorce action since the Plaintiff seeks to show that no valid marriage existed because no lawful marriage had ever been undertaken by the parties.

The question of jurisdiction of the defendant in annulment actions has led to some conflict among the various jurisdictions as shown in 4 American Jurisprudence 2d, Annulment of Marriage, Section 65, where the authors state "In an annulment action against a nonresident defendant, where the court has jurisdiction of the subject matter, either because of the domicile of one of the parties in the forum or because the marriage was celebrated there, the authorities are divided as to whether, apart from specific statutory authority, the court has power to

307

entertain the action upon constructive service on the nonresident defendant." Since this matter is being considered in Illinois based upon the domicile of the plaintiff, it is the Illinois rule and interpretation rather than the Iowa rule which would govern the question of jurisdiction. In Simonds v. Allen, 33 Ill App 512, the plaintiff sought under the old common-law procedure to establish in Illinois that his New York marriage was void. His wife, the defendant, was a resident of New York when the suit was filed and she was served with process in New York. Defendant defaulted but the Judge refused to enter the decree and on appeal the Appellate Court determined that the New York marriage was void. The parties had been married in New York in 1877 and lived there for a number of years. The husband later found out that his wife's former husband, whom he thought to be dead, was in fact alive in Michigan. That former husband had sued his wife for divorce and served her by publication in New York and obtained a Michigan divorce. At that time under New York law, a divorce could not be obtained from a New York resident who was not served personally. The Appellate Court in determining that the second New York marriage was a nullity stated (at page 517):

> "Such marriage was in fact and effect nothing but a mere form; as a contract or as creating the status of marriage between the parties, it was an absolute nullity."

In Weinberg v. Weinberg, 242 Ill App 414, plaintiff and defendant were first cousins and went to Kentucky to marry even though they were both Illinois residents. After their return to Chicago they never cohabited and the wife moved to South America. An action was instituted to declare the marriage void under the Illinois Marriage Evasion Act. The court found that plaintiff was entitled to relief. The court there stated (at page 416):

"The bill prayed that the marriage between complainant and defendant might be decreed to be null and void ab initio and for other relief. Defendant was served by publication, but has not appeared."

In Volume 26 of Illinois Law and Practice, Section 56 on Marriages (as is commonly stated in most treatises on the subject), the authors state:

"The power to annul a marriage requires jurisdiction of the marriage res and such jurisdiction depends on the domicile of at least one of the parties. The Circuit Court has jurisdiction of an action to annul a marriage, and the rules with respect to jurisdiction of the person are the same in general of those applied to divorce proceedings."

While there appear to be no exact precedents, such recital is substantially correct in its interpretation of the view taken by the courts in the older Illinois Appellate Court cases referred to. To the extent that such analysis would be of value, it is apparent that an annulment action or an action to declare a purported marriage invalid should be considered an in rem action, since the State of plaintiff's domicile has an interest in the marital status of its resident and since an annulment or similar action does in fact determine marital status. If neither party lived in the State where the marriage was contracted and both lived in separate states, it is obvious that the parties could have the status of the marriage determined in the state of domicile of the person initiating the proceeding and would not be required to go to the state where the marriage or presumed marriage was contracted. There appears to be no compelling reason for requiring the parties to go to such state simply because one of the parties has chosen to remain in that state where the person initiating the proceeding is domiciled in another state.

309

█ It is not necessary, however, that we predicate the jurisdiction of the person on service since an answer and counterclaim has in fact been filed in this cause and defendant has submitted herself to the jurisdiction of the court, even though such answer and counterclaim for separate maintenance were filed after the default order was entered (Lord v. Hubert, 12 Ill2d 83, 145 NE2d 77).

█ The really significant question before this court is whether the trial court should have set aside the default and judgment order pursuant to the power vested in the court by the terms of the statute (1963 Ill Rev Stats c 110, § 50(6)). The act provides that the court may in its discretion on motion filed within 30 days after the entry thereof set aside any final order, judgment, or decree, upon any terms and conditions that shall be reasonable. In the order entered by the Trial Judge on March 3, 1965, the trial court stated, among other things, in treating the recitals in the motion referring to the Scott County, Iowa, proceeding, and the question of negligence on the part of defendant:

> "The same being matters not of record as shown on the face of the pleadings, must be under oath or supported by affidavit in order to be entertained by the court. Even though the matters contained in said Paragraphs 5, 6 and 7 of said Motion would appear to have merit, they are ineffective since they are not verified."

Since the motion was taken under advisement by the trial court on February 21, 1964, and not finally determined until March 3, 1965, it was obviously given a great deal of thought and consideration by the court. We feel, however, on the basis of the recitals contained in the order of the court, that the trial court would have allowed the motion to vacate the order if the court did not feel that it could give no consideration to the matters re-

310

ferred to in the motion including the attached documents. This conclusion was apparently based on the fact that the motion was not verified.

In Widucus v. Southwestern Electric Cooperative, Inc., 26 Ill App2d 102, 167 NE2d 799, the Appellate Court stated:

> "History will reveal that the courts of Illinois have been liberal in setting aside defaults entered at the same term, and that where there has been no trial on the merits, the courts' discretion is usually exercised in favor of granting the motion . . . The statute, prior to the 1933 amendment, prescribed that a default might be set aside 'upon good and sufficient cause, upon affidavit . . .' Sec 58, Practice Act of 1907. Since the amendment, this quoted part has been deleted and now a default may be set aside 'upon any terms and conditions that shall be reasonable' . . . In view of the fact that the statute, as it now stands, does not contain the requirement that good and sufficient cause appear, we do not believe that a court now must categorically determine that a meritorious defense or a reasonable excuse be proven to justify setting aside a default. We believe that the discretion will be properly invoked if it is based upon principles of right and wrong and is exercised for the prevention of injury and the furtherance of justice . . . The entering of a default is one of the most drastic actions a court may take to punish for disobedience to its commands. The court has other powers which are ample in most instances. In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand."

The court also states (at page 108):

> "The question of whether or not a court should set aside a default should be so resolved as to do sub-

311

stantial justice between the parties and with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. In resolving this problem, a court may well consider whether or not a defendant has a meritorious defense, and whether or not defendant's delay in responding to the court's command actually jeopardizes plaintiff's basic position. But this should not be the only, nor necessarily, the determining factors. It seems to us that the overriding reason should be whether or not justice is being done . . . What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."

Similarly, in Lynch v. Illinois Hospital Services, Inc., 38 Ill App2d 470, 187 NE2d 330, the court reaffirms the conclusions set forth in the case of Widucus v. Southwestern Electric Cooperative, Inc., supra, and goes on to say (at pages 475, 476):

"Reviewing the record and exhibits in this cause, and after having heard the oral arguments of the parties, this court is not unmindful of the fact that the defendant's attorney, failed not once but twice to appear and represent the defendant in the trial court. Unquestionably, the trial court had grounds for believing that the defendant's attorney was careless and indifferent in not appearing on behalf of his client. We are not prepared to say that the order of the trial court denying the petition to set aside the default, was an abuse of discretion. We do not believe it is required, under the liberal interpretation and rule of the cases of Widucus v. Southwestern Electric Cooperative, Inc. . . . that this court determine as a matter of law, that the trial court exceeded or abused its discretion in denying the petition to set aside a default. We believe that the over-

312

riding rule that should determine cases of this character, is whether or not justice is being done.

". . . The motion of September 18, 1961, was made in apt time, within 30 days and this motion was denied. There is no showing that any hardship would result if the cause was tried on the merits."

The court went on to say, without any reflection on the trial court, that the Appellate Court felt that justice would be done by reversing the judgment and order of the trial court and remanding with instruction to set aside the default and permit Defendant to plead. On the basis of the record before us, we believe that a similar procedure should have been followed in this case and that it will promote the ends of justice to remand this case to the Circuit Court of Rock Island County with directions to set aside and vacate the order for declaratory judgment and permit defendant's answer and counterclaim to stand and to proceed with the trial of this cause on the merits.

Nothing we have stated in this opinion should be construed as justifying the position of the defendant or implying that either plaintiff's position or defendant's position, as asserted in the pleadings, is or is not justified as a matter of law. The sole purpose of remandment is based upon the determination of the court that on the basis of the record before us the default should be set aside and defendant should have her day in court.

The order of the Circuit Court of Rock Island County in the declaratory judgment action will, therefore, be reversed and this cause will be remanded with directions to the trial court to approve the filing of the answer and counterclaim heretofore filed by defendant and to proceed in the hearing of this cause on the merits.

Reversed and remanded with directions.

CORYN, P. J. and STOUDER, J., concur.